896 F.Supp. 507 (1995)
Michael G. GILMAN
v.
WHEAT, FIRST SECURITIES, INC.
Civ. No. JFM-95-1245.
United States District Court, D. Maryland.
July 31, 1995.
*508 John B. Isbister, Tydings and Rosenberg, Baltimore, MD, Richard M. Meyer, Milberg, Weiss, Bershad, Hynes and Lerachlerach, New York City, for plaintiff.
Michael Patrick McQuillen, John Ray Range, Hunton and Williams, Washington, DC, James E. Farnham, Michael R. Shebelskie, Hunton and Williams, Richmond, VA, for defendant.

MEMORANDUM
MOTZ, Chief Judge.

I. Introduction
Plaintiff Michael G. Gilman brings this suit as class representative against Wheat, First Securities, Inc. alleging various Maryland statutory and common law violations in connection with defendant's alleged receipt of payment for order flow. The purported class of "several thousand persons" comprises all persons who have had a brokerage account with defendant for whom defendant executed transactions in securities and received payment for order flow from market makers. According to plaintiff, defendant placed orders with market makers in exchange for cash payments and other inducements in violation of state law.
Plaintiff originally filed this suit in the Circuit Court for Montgomery County. Plaintiff states five causes of action: Counts I and II for violations of the Maryland Securities Act; Count III for breach of fiduciary duty; Count IV for breach of contract; and Count V for conversion. In his complaint, plaintiff seeks unspecified damages, declaratory and injunctive relief prohibiting defendant from continuing the allegedly illegal receipt of payment for order flow, and "such other relief as this Court deems just and proper."
Defendant removed the action to this court, asserting both federal question and diversity jurisdiction.[1]See 28 U.S.C. §§ 1331, 1332. Plaintiff now moves to remand for lack of subject matter jurisdiction. See 28 U.S.C. § 1447(c). Generally, the burden of establishing federal jurisdiction is on the defendant in a removal action. See, e.g., Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921). The burden is placed on defendant and the removal statute is strictly construed for three *509 reasons: federalism concerns, respecting plaintiff's forum choice, and following Congress's intent to control diversity caseloads. Since no plaintiff has over $50,000 in controversy and plaintiff's action does not arise under the Constitution, laws, or treaties of the United States, this court has neither diversity nor federal question jurisdiction and must remand this action.[2]

II. Diversity Jurisdiction
The parties do not dispute that there is complete diversity of citizenship.[3] Therefore, my analysis of diversity jurisdiction will focus on the amount in controversy. Since plaintiff did not seek a specific amount in his complaint, the burden on defendant is to establish that the amount in controversy exceeds $50,000. See, e.g., De Aguilar v. Boeing Co., 11 F.3d 55, 58 (5th Cir.1993); Gafford v. General Elec. Co., 997 F.2d 150, 158 (6th Cir.1993); Gaus v. Miles, Inc., 980 F.2d 564, 566-67 (9th Cir.1992). Further, since plaintiff purports to sue on behalf of a class of similarly situated individuals, I will assume that the suit is a class action for purposes of determining jurisdiction. See, e.g., In re Abbott Laboratories, 51 F.3d 524, 525 n. 1 (5th Cir.1995); Eagle v. American Tel. and Tel. Co., 769 F.2d 541, 545 n. 1 (9th Cir.1985), cert. denied, 475 U.S. 1084, 106 S.Ct. 1465, 89 L.Ed.2d 721 (1986).
The requisite amount in controversy cannot be met by aggregating the separate claims of individual class plaintiffs. Snyder v. Harris, 394 U.S. 332, 336, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969). The non-aggregation rule requires that at least one individual must have claims greater than $50,000 for a federal court to have diversity jurisdiction over the action. Zahn v. International Paper Co., 414 U.S. 291, 300, 94 S.Ct. 505, 511, 38 L.Ed.2d 511 (1973).[4] In Snyder, the Supreme Court considered two class actions where the named plaintiffs alleged damages less than the necessary amount in controversy. The Court upheld the long standing principle that "separate and distinct claims could not be aggregated to meet the required jurisdictional amount." Snyder, 394 U.S. at 336, 89 S.Ct. at 1056. In Zahn, the Court examined a proposed class of four plaintiffs, only one of whom met the jurisdictional amount. The Court reiterated the non-aggregation rule and also noted that "any plaintiff without the jurisdictional amount must be dismissed from the case, even though others allege jurisdictionally sufficient claims." Zahn, 414 U.S. at 300, 94 S.Ct. at 511.[5] In sum, each class plaintiff must be examined individually, and the court will have diversity jurisdiction only if an individual has more than $50,000 in controversy.
Snyder and Zahn also prohibit establishing the amount in controversy solely "from the defendant's perspective." Lonnquist v. J.C. Penney Co., 421 F.2d 597, 599 (10th Cir. 1970); Copeland v. MBNA America, N.A., *510 820 F.Supp. 537, 542 (D.Colo.1993). The exact value of an overall claim, such as attorneys' fees or injunctive relief, can be determined by looking at the cost to the defendant, and thus if there is only one plaintiff in the case the value of the claim is properly attributed to that single individual. Government Employees Ins. Co. v. Lally, 327 F.2d 568 (4th Cir.1964). However, in a class action, Snyder and Zahn prohibit attributing the entirety of aggregated individual claims to the named plaintiff.

A. Actual Damages
This court has diversity jurisdiction if any individual plaintiff's claim for compensatory damages exceeds $50,000. However, defendant does not dispute that the actual damages claims are for one to two cents per share traded, amounting to a total of a few dollars per plaintiff.
Defendant does point to an "information report" cover sheet that plaintiff was required to attach to his state court complaint. Def.'s Ex. A. On that information report, plaintiff checked a box identifying the "Actual Damages" in tort as "Over $100,000." However, this is no evidence that plaintiff is claiming more than $100,000 in individual damages. Rather, it is completely consistent with the undisputed facts that the damages for each individual plaintiff are a few dollars and that there are thousands of individual plaintiffs. Thus, although the amount of actual damages to the entire class can reasonably have been thought to exceed $100,000, the information report is no evidence of the value of any individual's actual damages.

B. Attorneys' Fees
Potential attorneys' fees should be considered in determining whether the amount in controversy in a diversity action exceeds the jurisdictional threshold. Missouri State Life Ins. Co. v. Jones, 290 U.S. 199, 202, 54 S.Ct. 133, 134, 78 L.Ed. 267 (1933). See Saval v. BL Ltd., 710 F.2d 1027, 1033 (4th Cir.1983). Gilman has stated a claim for relief under the Maryland Securities Act which authorizes the recovery of attorneys' fees in certain situations. See Md. Corps. & Ass'ns Code Ann. § 11-703(b)(1)(i) (1993).[6]
Defendant has submitted no affidavit or other materials to support its assertion that attorneys' fees will exceed $50,000. However, assuming arguendo that an extremely large amount of attorneys' fees is at issue in this case, the amount in controversy requirement is still not met by any individual plaintiff since the total amount of attorneys' fees must be attributed pro rata among the individual class members.
The Ninth Circuit case of Goldberg v. CPC Int'l, Inc., 678 F.2d 1365 (9th Cir.), cert. denied, 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982), is closely analogous to the case at bar. In Goldberg, plaintiffs sued in state court based on state law on behalf of a class with "small individual claims." The removing defendants alleged that the amount in controversy for diversity jurisdiction was satisfied because of the potential for attorneys' fees under one of the state statutes that was allegedly violated. The defendants argued that "the potential attorneys' fees should be attributed to the named plaintiffs only, rather than pro rata to each class member." Id. at 1367. The court rejected defendants' argument because it "would conflict with the policy of Zahn," and reversed the district court's denial of the plaintiffs' motion for remand. Id.[7] The argument rejected by the Goldberg court is exactly that advanced by the defendant here who would attribute all of the potential attorneys' fees to the named plaintiff.
*511 Likewise, in National Org. for Women v. Mutual of Omaha Ins. Co., 612 F.Supp. 100 (D.D.C.1985), the court considered whether a proposed class action seeking small actual damages but, inter alia, attorneys' fees, should be remanded for failure to meet the diversity amount in controversy. The court noted that the total attorneys' fees in the case might exceed the jurisdictional amount but agreed with the reasoning of Goldberg that attorneys' fees should not "be considered as payable only to the named plaintiffs," because doing so would violate the non-aggregation rule of Zahn. Id. at 109.
Under the relevant Maryland statute, if the named plaintiff can recover attorneys' fees, so could any similarly situated plaintiff. Nothing particular to the class representative gives him a unique right to recover all of the attorneys' fees generated by the class action. Thus, the total attorneys' fees must be prorated among the thousands of class plaintiffs. Since the claim of each individual plaintiff can only support a pro rata share of attorneys' fees, the amount in controversy is met only if the individual claims are aggregated, but such aggregation is prohibited by Snyder and Zahn. See also Czechowski v. Tandy Corp., 731 F.Supp. 406, 410 (N.D.Cal. 1990) (apportioning attorneys' fees "pro rata among the class members" and remanding the case to state court).
The primary case relied on by defendant is In re Abbott Laboratories, 51 F.3d 524 (5th Cir.1995). In Abbott Laboratories, the court attributed all attorneys' fees to the named plaintiff, but only because Louisiana law specifically provided:
The court may allow the representative parties their reasonable expenses of litigation, including attorney's fees, when as a result of the class action a fund is made available, or recovery or compromise is had which is beneficial to the class.
La.Code Civ.Proc. art. 595 (emphasis added). In the instant case, the Maryland statute providing for the award of attorneys' fees does not award them exclusively to the class representatives, but rather states that "a buyer may sue either at law or in equity ... to recover ... reasonable attorneys' fees." Md. Corps. and Ass'ns Code Ann. § 11-703(b)(1)(i) (1993) (emphasis added). In the instant case each class plaintiff, as a buyer, would be eligible to recover attorneys' fees.[8]

C. Injunctive and Declaratory Relief
Plaintiff's request for broad injunctive relief does not give any individual plaintiff a sufficient amount in controversy to establish federal diversity jurisdiction. Again, defendant has failed to meet its burden of establishing that the cost of complying with the injunction requested by plaintiffs exceeds the jurisdictional amount in controversy requirement. Nonetheless, assuming arguendo that compliance would cost defendant millions of dollars, no individual plaintiff has a sufficient amount in controversy based on their individual pro rata share of the value of the injunction.
In Snow v. Ford Motor Co., 561 F.2d 787 (9th Cir.1977), the named plaintiff filed a class action seeking actual damages of $11.00 for each member of the class, punitive damages, and an injunction prohibiting Ford from continuing an allegedly fraudulent practice. The Ninth Circuit did not allow the claim for injunctive relief to provide a basis for federal diversity jurisdiction and ordered the case remanded to state court. Id. at 791. Finding that Snyder's ban on aggregation was controlling, the court observed that:
The only reason the injunction is worth more than [the jurisdictional amount] to Ford is that it would affect all of Ford's future trailer package sales to thousands of other individual consumers. In short, we hold that, where "the equitable relief sought is but a means through which the individual claims may be satisfied, the ban on aggregation [applies] with equal force to the equitable as well as the monetary relief." *512 Id. at 790 (citation omitted). Likewise in the instant case, the injunction is worth more than $50,000 to defendant only because the injunction would affect all of defendant's future securities sales to thousands of individual consumers. The Snow court recognized that any contrary conclusion would allow parties "to avoid the rule of Snyder and Zahn [by praying] for an injunction." Id. at 791.
Numerous other courts have agreed with the holding of the Snow court. One echoed that "[i]n a diversity-based class action seeking primarily money damages, allowing the amount in controversy to be measured by the defendant's cost [of complying with an injunction] would eviscerate Snyder's holding that the claims of class members may not be aggregated in order to meet the jurisdictional threshold." Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1050 (3d Cir.) (ordering dismissal of class action complaint where defendant's compliance with the requested injunction would have exceeded the jurisdictional amount), cert. denied ___ U.S. ___, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993). See also Lonnquist v. J.C. Penney Co., 421 F.2d 597, 599 (10th Cir.1970) (ordering remand of class action where compliance with the requested injunction would cost defendant $500,000 per year); Copeland v. MBNA America, N.A., 820 F.Supp. 537, 541 (D.Colo. 1993) (remanding class action where cost to defendant of complying with the requested injunction would have exceeded jurisdictional amount); National Org. for Women, 612 F.Supp. at 107-108 (same).[9]
By any stretch of the imagination, adding an individual plaintiff's few dollars in actual damages to her pro rata share of attorneys' fees and injunctive relief will not surpass $50,000. Defendant has failed to meet its burden of establishing that at least one individual plaintiff meets the requisite amount in controversy. Therefore, this court lacks diversity jurisdiction over this action.

III. Federal Question Jurisdiction
Defendant also suggests that this court has federal question jurisdiction over this case "because of the `complete preemption' provided by the federal securities act." Def.'s Mem.Opp. at 13.
While defendant is correct that federal question jurisdiction exists when federal law completely preempts the area of state law set out in a complaint, see, e.g., Caterpillar Inc. v. Williams, 482 U.S. 386, 393-94, 107 S.Ct. 2425, 2430-31, 96 L.Ed.2d 318 (1987), federal law has not completely preempted the securities area. Courts have based federal question jurisdiction on such "complete preemption" only in a few areas such as copyright, labor relations, and the Employee Retirement Income Security Act. See, e.g., Rosciszewski v. Arete Assocs., Inc., 1 F.3d 225, 231-33 (4th Cir.1993). As to securities law, it is "well settled that federal law does not enjoy complete preemptive force in the field of securities." Baker, Watts & Co. v. Miles & Stockbridge, 876 F.2d 1101, 1107 (4th Cir.1989). Cf. Dumont v. Charles Schwab & Co., Inc., 1995 WL 262262, 1995 U.S. Dist. LEXIS 5992 (E.D.La. May 3, 1995) (finding no complete preemption of plaintiff's state law challenge to payment for order flow and remanding to state court); Thomas v. Charles Schwab & Co., Inc., No. 95-0307 (W.D.La. July 12, 1995) (same). Thus, this court does not have federal question jurisdiction over this case.
A separate order effecting the ruling made in this Memorandum is being entered herewith.

ORDER
For the reasons set forth in the memorandum entered herewith, it is, this 31st day of July 1995
ORDERED
1) Plaintiff's motion to remand is granted, and
2) This case is remanded to the Circuit Court for Montgomery County, Maryland.
NOTES
[1] Defendant also suggests that plaintiff somehow "acknowledged" federal subject matter jurisdiction over this action by not pressing for a remand in a similar suit filed in another federal court. However, parties cannot establish subject matter jurisdiction by consent, Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982).
[2] Because this court lacks subject matter jurisdiction, I will not rule on defendant's Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer or Stay.
[3] Diversity of citizenship in a class action depends solely on the citizenship of the named parties. Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356, 366, 41 S.Ct. 338, 342, 65 L.Ed. 673(1921). Plaintiff is a citizen of Maryland and defendant is incorporated in Virginia with its principal place of business in Virginia.
[4] An exception to the non-aggregation rule has been recognized where the class members have "a common and undivided interest" in the claim. Zahn, 414 U.S. at 294, 94 S.Ct. at 508. This exception does not apply to the case at bar and defendant does not argue that it should. As to the damages claim in the instant case, "each class member was injured individually, and in a unique amount that in theory must be proved separately." Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1050 n. 14 (3d Cir.1993). Further, courts consistently hold that class plaintiffs do not have a "common and undivided interest" in attorneys' fees and injunctive relief in this type of case. See infra notes 7 and 9. Here, each class plaintiff could sue in her own right for all the relief requested by the class.
[5] A number of courts have concluded that the passage of the supplemental jurisdiction statute, codified at 28 U.S.C. § 1367, overruled Zahn, but only insofar as Zahn prohibited a federal court from exercising ancillary jurisdiction over the state law claims of individual class members who did not meet the amount in controversy themselves. See, e.g., In re Abbott Laboratories, 51 F.3d 524, 529. Those courts continue to apply the non-aggregation rule enunciated in Snyder and Zahn to determine whether any individual plaintiff has met the amount in controversy as a threshold matter.
[6] Plaintiff did not specifically request attorneys' fees in his complaint. However, defendant notes that attorneys' fees might be recoverable under the Maryland Securities Act and in his reply, plaintiff did not dispute that he may seek them. Further, plaintiff did request "other such relief that this Court deems just and proper" in his complaint. Thus, for purposes of this motion, I assume that attorneys' fees are sought and recoverable by plaintiff.
[7] The Goldberg court also properly rejected the related argument that potential attorneys' fees fit within the "common and undivided interest" exception to the non-aggregation rule. Accord Mayo v. Key Financial Services Inc., 812 F.Supp. 277 (D.Mass.1993); Copeland v. MBNA America, N.A., 820 F.Supp. 537 (D.Colo.1993).
[8] Since the proposed class comprises "several thousand" plaintiffs, even wild speculation in favor of defendant as to the amount of reasonable attorneys' fees would result in only minimal attorneys' fees being attributable to any individual plaintiff. For example, if the class comprises 2,000 individuals and the reasonable attorneys' fees awarded were $10,000,000, each individual plaintiff would have only $5,000 in controversy from the attorneys' fees.
[9] Nor does an injunction prohibiting future illegal practices that affect individuals in separate and distinct ways fit within the "common and undivided interest" exception to the non-aggregation rule. See, e.g., Packard, 994 F.2d at 1050 n. 14; Snow, 561 F.2d at 789 n. 3.